UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONI HOWARD,<br><br>      Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>      Defendant. | Case No. C13-916-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

Joni Howard seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends the ALJ erred by (1) posing an unclear hypothetical to the vocational expert ("VE"), whose testimony in response was inconsistent with the Dictionary of Occupational Titles ("DOT"); and (2) not giving specific and legitimate reasons for rejecting the opinion of treating physician Deborah Benz, M.D. Dkt. 17. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

## BACKGROUND

Ms. Howard is currently 53 years old, has a high school education with two years of college, and has worked as a paralegal, dispatch/office worker, custodian, road flagger, and

REPORT AND RECOMMENDATION - 1

municipal maintenance worker.[1] On April 10, 2009, she applied for benefits, alleging disability as of October 1, 2002.[2] Tr. 128-40. Her applications were denied initially and on reconsideration. Tr. 86-93, 100-04. The ALJ conducted a hearing on June 30, 2011 (Tr. 34-82), and subsequently found Ms. Howard not disabled. Tr. 14-28. As the Appeals Council denied Ms. Howard's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:** Ms. Howard engaged in substantial gainful activity from July 10, 2006, to July 10, 2007, but there were other continuous 12-month periods during the relevant time period during which the claimant did not engage in substantial gainful activity.

**Step two:** Ms. Howard's degenerative disc disease, bilateral shoulder impingement syndrome status post left shoulder subacromial decompression, fibromyalgia, obesity, depression, and anxiety are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[4]

**Residual Functional Capacity ("RFC"):** Ms. Howard can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and walk for two hours a time, respectively, with usual and customary breaks. She must be allowed to alternate between sitting and standing at will, which would entail changing positions for just a few minutes at a time at her workstation. She can push and/or pull on occasional basis with the left, non-dominant upper extremity. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs ladders, ropes and scaffolds. She must avoid concentrated exposure to vibration. She has sufficient concentration to understand, remember and carry out simple, routine tasks of the kind found in unskilled work with a specific vocational preparation rating up to 2. She can understand, remember and carry out more complex tasks, but only for 2/3 of the workday. She has sufficient persistence and pace to work superficially with the general public, greeting people and responding to simple requests. She has sufficient persistence and pace to work in coordination with a small

---
[1] Tr. 128, 166, 183.
[2] The ALJ defined the relevant period as starting on April 13, 2004, due to an unappealed prior denial of benefits on April 12, 2004. Tr. 14.
[3] 20 C.F.R. §§ 404.1520, 416.920.
[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

REPORT AND RECOMMENDATION - 2

group of one to five coworkers and to work in a room with more than five coworkers, but not in coordination with them.

**Step four:** Ms. Howard cannot perform her past work.

**Step five:** As there are other jobs that exist in significant numbers in the national economy that Ms. Howard can perform, she is not disabled.

Tr. 14-28.

## DISCUSSION

**A.     The ALJ Erred in Failing to Address Dr. Benz's Opinions on Reaching Limitations**

Dr. Benz provided multiple opinions regarding Ms. Howard's physical capacities and ability to work during their December 2003-December 2005 treatment relationship. *See* Tr. 25. Ms. Howard argues that the ALJ erred in rejecting Dr. Benz's opinions to the extent that she indicated that Ms. Howard requires an ergonomic chair, keyboard, or workstation, and that she has limitations on reaching. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (providing that an ALJ must provide specific and legitimate reasons to discount a contradicted medical opinion). Ms. Howard concedes that the ALJ's failure to provide an explicit reason to reject Dr. Benz's opinion regarding ergonomics "may be" harmless, because the VE testified that employers tend to provide ergonomic workstations. Dkt. 22 at 13. Ms. Howard provided no argument as to why this alleged error might *not* be harmless, and thus the Court construes this as a concession and turns to consider whether the ALJ erred in rejecting Dr. Benz's opinion regarding reaching limitations.

The ALJ did not explicitly address any of Dr. Benz's 2004 and 2005 opinions regarding Ms. Howard's reaching limitations (Tr. 279, 284, 456, 461, 792), except to note that in Dr. Benz's most recent opinion, she did not indicate that Ms. Howard could not lift above midchest level. Tr. 25. The Commissioner cites Dr. Benz's November 2004-December 2005 opinions,

REPORT AND RECOMMENDATION - 3

which do not mention limitations on reaching forward, to argue that the ALJ was entitled to reject older opinions as less probative.  Dkt. 25 at 5-6 (citing Tr. 718, 1140, 1143, 1151, 1175, 1179).  There are two problems with this line of argument, however.  First, the ALJ did not state that she found Dr. Benz's older opinions to be less probative due to their remoteness in time, and thus the Commissioner's argument is post hoc.  Furthermore, as the Commissioner acknowledges, Dr. Benz's "older" opinions were nonetheless dated within the relevant time period.  Dkt. 25 at 6:12-14.

Second, the Commissioner emphasizes that Dr. Benz did not opine that Ms. Howard had any limitations on reaching *forward* after July 2004, but fails to explain why this is relevant, given that Dr. Benz continued to indicate other reaching restrictions through April 2005.  Dkt. 25 at 6.  Although Dr. Benz's October and December 2005 records did not mention any reaching restrictions (Tr. 446, 732), the Commissioner has not shown or even argued that the ALJ provided reasons to discount Dr. Benz's May 2004-April 2005 opinions regarding Ms. Howard's reaching limitations.  The ALJ stated that she discounted all of Dr. Benz's opinions in light of Ms. Howard's ability to sit 3-4 hours per day doing homework, her normal strength in her lower extremities and lack of focal neurological deficits, and lack of imaging evidence showing that she could not stand, walk, and sit for two hours at a time as long as she could change positions at her workstation as needed.  Tr. 25.  None of these reasons relate to Dr. Benz's opinions regarding Ms. Howard's reaching limitations.  Although there may be specific and legitimate reasons to discount Dr. Benz's opinions regarding reaching limitations, the ALJ did not provide them here and thus shall reconsider those opinions on remand.

**B.      The ALJ Erred at Step Five.**

Ms. Howard's initial challenge to the ALJ's step-five findings centers on an alleged

REPORT AND RECOMMENDATION - 4

discrepancy in the description of her sit/stand option between the ALJ's written RFC assessment and hypothetical posed to the vocational expert ("VE") in an interrogatory.[5] In the decision, the ALJ found that Ms. Howard "can sit stand and walk for two hours a time, respectively, with usual and customary breaks. She must be allowed to alternate between sitting and standing at will, which would entail changing positions for just a few minutes at a time at her workstation." Tr. 21. The ALJ's VE hypothetical was worded differently, indicating that the hypothetical claimant can "SIT, STAND WALK 2 HRS AT A TIME With USUAL & CUSTOMARY BREAKS, this means shecan sit-stand at will, changing positions for just a few minutes at a time and not away from the workstation[.]" Tr. 1068 (format and errors in original).

According to Ms. Howard, the VE interrogatory contains an internal inconsistency, because it states that the individual can both sit/stand/walk for two hours at a time, but also that she must be able to sit or stand at will. The Court disagrees, because the ALJ explicitly indicated that the sit/stand option permitted the individual to change positions for just a few minutes at a time, and thus the time shifting positions was intended to be enveloped in the two-hour block of sitting/standing/walking. For example, the individual could sit for an hour, then stand for a few minutes at her workstation, then sit for another hour, before switching to a work activity that requires walking for two hours (with the ability to sit for a few a minutes at her workstation when necessary). Ms. Howard has not identified an inconsistency in the ALJ's wording; it may be inartful, but it is not inconsistent.

Ms. Howard also argues that even if the hypothetical is not internally inconsistent, it is inconsistent with the ALJ's RFC assessment in the written decision, which does not equate the

---

[5] The ALJ posed an oral hypothetical to the VE at the administrative hearing (Tr. 74-79), but subsequently submitted an interrogatory to the VE, after notifying Ms. Howard and providing an opportunity for comment on the interrogatory. Tr. 233-43, 1066, 1070.

REPORT AND RECOMMENDATION - 5

ability to sit/stand/walk for two hours at a time with the requirement of a sit/stand option via the "this means" language used in the hypothetical. Dkt. 22 at 10. This semantic quibbling highlights an irrelevant discrepancy between the RFC assessment and VE hypothetical: in either wording, it is clear that the individual can sit/stand/walk for two hours at a time with usual and customary breaks, assuming that she can also sit/stand at will at her workstation for just a few minutes at a time when necessary. Whether the sit/stand option is included as a separate requirement, or as a clarification of the two-hour sitting/standing/walking capability, the ALJ included both parameters in the decision and in the hypothetical. Thus, the discrepancy in the wording of the ALJ's RFC assessment and VE hypothetical is immaterial.[6]

Ms. Howard next challenges the ALJ's step-five findings on the grounds that the VE's testimony conflicts with the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007) (holding that an ALJ may rely on VE testimony that conflicts with the DOT only if the conflict is reasonably explained). At the hearing and in the interrogatory, the VE noted that the DOT does not address sit/stand options (Tr. 78, 81, 1069), but she testified at the hearing that she believed a person with a sit/stand option could perform light jobs such as legal assistant and office clerk because "there is more kind of getting up, walking around, going to various stations in the office, you know, as opposed to somebody who's just sitting at a computer doing data entry, taking phone calls" in a sedentary job. Tr. 78. The ALJ referenced the VE's explanation in her written decision and found that the VE's testimony was consistent with the DOT "with the exception of the sit-stand option which [the VE] indicated is not addressed in the DOT and for

---

[6] The Court also notes that Ms. Howard was provided notice of the ALJ's VE interrogatory and an opportunity to object to any aspect of it, and her counsel did not object to the wording at that time. Tr. 241-43. Ms. Howard also did not raise this issue in her request for Appeals Council review. Tr. 244-46. Accordingly, it appears that Ms. Howard waived her objection to the ALJ's wording. *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).

which she provided satisfactory testimony for deviating from the DOT when discussing the sit-stand option." Tr. 27.

The VE explicitly noted that the DOT does not address sit/stand options, and explained why she believed a sit/stand option was not inconsistent with the hypothetical individual's performance of the jobs of legal assistant and office clerk. Tr. 78. But these jobs were not the jobs that the ALJ found that Ms. Howard could perform; the VE's explanation related to legal assistant and office clerks jobs does not apply with equal force to the small parts assembler, storage facility rental clerk, and injection molding machine tender jobs identified at step five. Tr. 27, 1069. Although the ALJ stated that the VE satisfactorily explained how her testimony deviated from the DOT, the VE in fact provided no explanation of the deviation in reference to the jobs identified at step five, and this failure is fatal. Tr. 27, 78-81, 1069. On remand, the ALJ shall reconsider her step-five findings, and obtain additional VE testimony to determine whether Ms. Howard can perform representative jobs despite her need for a sit/stand option. *See Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) (affirming an ALJ's reliance on VE testimony where the VE "noted that although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research. Therefore, the conflict between the DOT and the [VE] was addressed and explained by the [VE], and the ALJ addressed this in the decision.").

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.

On remand, the ALJ shall reconsider Dr. Benz's opinions regarding Ms. Howard's reaching limitations, and either credit them or provide specific and legitimate reasons to discount

them, and, if necessary, reformulate the RFC assessment. She shall also obtain additional VE testimony to determine whether Ms. Howard can perform representative jobs despite her need for a sit/stand option.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **January 16, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **January 17, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 2nd day of January, 2014.

／s／
BRIAN A. TSUCHIDA
United States Magistrate Judge